IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEVONERE JOHNSON,

                Plaintiff,                   OPINION AND ORDER

v.

                                           22-cv-77-wmc

PLS GROUP, PLS CHECK CASHER,
and LEONARD WILKERSON,

                Defendants.

---

*Pro se* plaintiff Devonere Johnson contends that defendant Leonard Wilkerson and other employees at PLS Check Cashers ("PLS") refused to cash his checks based on his race in violation of 42 U.S.C. § 1981.[1] Defendants Wilkerson and PLS move for summary judgment on Johnson's claim on the grounds that (1) there is no evidence of race-based discrimination and (2) they have a legitimate, nondiscriminatory reason for the challenged conduct. (Dkt. #37.) For the following reasons, the court will grant defendants' motion for summary judgment.

---

[1] Although Johnson also named both PLS and "PLS Group" as defendants, he does not dispute defendants' assertions that the latter has not been properly served and is not involved in any of the alleged events in this case, nor has he offered a basis for this court to exercise personal jurisdiction over this defendant, which is headquartered in Delaware and does not do business in Wisconsin. (Dkt. #38 at 1 n.1.) Because there is no dispute that PLS Group has not properly been made a party to this case, the court will dismiss this defendant.

UNDISPUTED FACTS[2]

A. Parties

Johnson is an African American man who lives in Madison, Wisconsin. PLS Financial Solutions owns and operates PLS Check Cashers stores in Madison, where customers may cash checks. Defendant Leonard Wilkerson is a PLS District Manager.

B. Check-cashing policies and procedures at PLS

While PLS is in the business of cashing checks, it has adopted policies and procedures to prevent financial losses from bad checks. These policies and procedures require employees to examine and confirm the information on a check, as well as reviewing any notes about the customer in PLS's system, including whether a customer has attempted to cash the same check multiple times. Employees must also verify the signature endorsement, which may include watching the customer sign the check and requesting the customer's identification, then comparing the signature and check information with any checks the customer cashed previously.

PLS's procedures also require employees to ask numerous questions of a customer before cashing a check to help the employee determine: whether the check is real; whether the customer is entitled to the check; and whether the customer can make restitution if the

---

[2] Unless otherwise indicated, the following facts are material and undisputed. Plaintiff did not respond to defendants' proposed findings of fact as required by the court's summary judgment procedures. The court will not search the record for evidence, but to account for plaintiff's *pro se* status, the court has attempted to consider all material, admissible evidence in a light most favorable to him. *Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

check is not honored. To these ends, an employee will ask a customer to identify who issued the check, and to explain why the check was issued and what the customer's relationship is to the issuer. If an employer issued the check, or if the check is written for a large amount, an employee will ask the customer additional questions, including to confirm how long they have worked for the employer, their position, and who they report to at work, as well as ask for any old pay stubs or other documentation confirming that they are an employee.

Finally, in some circumstances, a PLS employee must also seek a manager's review of a check before cashing it. For example, the employee must notify a manager if the customer has cashed a returned check or if there are any discrepancies in the check information. However, an employee cannot *refuse* to cash a check without a manager's approval.

## C. Johnson's attempts to cash two checks at PLS on July 30, 2021

Johnson tried to cash two settlement checks from a construction company in the amounts of $10,750 and $6,809.65 at two different PLS locations in Madison, Wisconsin, on July 30, 2021. First, he went to the location on East Washington Avenue, where he was "asked questions about the check[s] which was normal procedure," and denied service. (Dkt. #51 at 1.)

Second, Johnson next took his checks to the South Park Street location, where he presented one check and was asked, "where you make this at?" (*Id*.) He attests that he was asked other "peculiar questions challenging the validity of [the] check," including: whether he worked for the company named on the check; how long he had worked there;

3

what work he did; how he obtained the check; and whether he had lived at the same address for at least two years. (Dkt. #44 at 57:21-58:6; 62:17-22; 63:21-25.) Johnson "let them know everything," and "the company told them the checks were real," but further attests that "they still denied cashing [his] check" while cashing the checks of other African American and white customers. (*Id.* at 61:21-25; 63:24-64:11.)

Further, the PLS employees at the Park Street location who examined Johnson's check attest that they determined the check required further review from a manager, but that Johnson voluntarily left the store before that happened. (Dkt. ##41 at 3; 43 at 3.) Johnson used his cellphone to record video of the end of his interaction with PLS employees at Park Street. (Dkt. #54.) The cellphone video is just under two minutes long and does not show any customers other than Johnson, although Johnson asserts that a white customer was cashing a check at the same time. (Dkt. #51 at 2.) The video begins with Johnson repeatedly asking for his check back before an employee responds that she must wait for her boss to decide whether to cash the checks. (*Id.* at 0:49-1:03.) Johnson then replies that the employee "wasn't told not to cash that check," and he again asks for his check back if it will not be cashed. (*Id.* at 1:03-1:12.) Another employee then returns Johnson's check, and Johnson argues with the employee about calling the police before the employee suggests that Johnson leave the store. (*Id.* at 1:27-1:45.)

PLS asserts that it cashed hundreds of checks at its Madison locations, including many checks for African American customers, that same day. Ultimately, Johnson cashed his checks elsewhere.

4

OPINION

A party is entitled to summary judgment if the movant shows that there is no genuine dispute as to any material fact, and judgment is appropriate as a matter of law. Federal Rule of Civil Procedure 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. If the moving party makes a showing that the undisputed evidence establishes their entitlement to judgment beyond reasonable dispute, then to survive summary judgment, the non-moving party must provide contrary evidence "on which the jury could reasonably find for the nonmoving party." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252). There is an additional qualifier in cases where, as here, video evidence is available: "to the extent [a party's] story is 'blatantly contradicted' by the video such that no reasonable jury could believe it, we do not credit his version of events." *Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Here, plaintiff asserts race discrimination claims against both Wilkerson and his employer PLS under 42 U.S.C. § 1981, which "protects the right of all persons 'to make and enforce contracts' regardless of race." *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). Generally, courts apply the statute to claims of discrimination in retail transactions. *E.g., Bagley v. Ameritech Corp.*, 220 F.3d 518, 519-520 (7th Cir. 2000) (attempting to buy a cordless phone); *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996) (attempting to buy office supplies). To establish a claim under § 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) defendants intended to discriminate

5

on the basis of race; and (3) the discrimination deprived plaintiff of one or more rights enumerated in the statute, such as the making and enforcing of a contract. *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005). A plaintiff may rely on the familiar framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973) to establish discrimination in this context. *See, e.g., Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759, 761-62 (7th Cir. 2022) (applying *McDonnell Douglas* to discrimination claims under § 1981, Title VII, and the Age Discrimination in Employment Act). To prevail, however, a § 1981 plaintiff must "ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

On this record, plaintiff has simply not met his burden of production to proceed to trial. To the contrary, defendants affirmatively produce evidence undermining any perceived bias on plaintiff's behalf, including proof that racial animus does not drive check cashing decision with PLS, while plaintiff essentially bases his claim on the fact that PLS employees asked him specifically what he describes as "peculiar questions" about the validity of his checks and his employment. (Dkt. ##1 at 3; 44 at 57:15-23.) But the questions he recalls being asked are among those that PLS employees are required to ask of *all* customers to help avoid financial losses from cashing bad checks. Indeed, plaintiff concedes that questioning at the first store on East Washington Avenue was part of "normal procedure." (Dkt. #51 at 1.) So, by the time he presented the checks at the second store on South Park Street, his check presentment was already subject to additional scrutiny under PLS's written policy and procedures. Moreover, plaintiff does not dispute

6

that he was attempting to cash large checks from an employer, which also triggers additional scrutiny under PLS's procedures. (Dkt. #39 at ¶¶ 14, 23, 24.)

Nor does plaintiff offer any evidence suggesting that PLS employees did not also ask the same questions of other customers and, thus, treated him any differently than they would have treated other customers in the same circumstances, much less any direct or indirect evidence from which a reasonable jury could infer a racial motivation underlying those questions. Instead, the court is left with plaintiff's personal beliefs about a PLS employee's motives, which however sincerely held they may be, are not enough to survive summary judgment. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 354, 359 (7th Cir. 2007) (plaintiff's assertions "alone cannot create a genuine issue of material fact sufficient to survive summary judgment"). The fact that plaintiff was later able to cash his checks elsewhere does not establish that his inability to cash them with PLS was the but-for result of racial discrimination.

Finally, the cellphone video, which captures the end of plaintiff's second attempt to cash a check at Park Street, does not save plaintiff's claim. Rather, the video does not even show what preliminary questions plaintiff was asked, nor any other customers being served while his large, already once-rejected check remained under consideration. Even if a white customer was being served at the same time, this video fails to show the circumstances surrounding why other customers' checks were being cashed. And while an employee ultimately returned plaintiff's check and suggested that plaintiff leave the store at the end of the video, that is *after* a PLS employee explained the reason for the delay in cashing his check, plaintiff repeatedly interrupted the transaction by asking for his check back if it

7

would not be immediately cashed and suggested that the police should be called so his check would be returned. *Cf. Bagley*, 220 F.3d at 521-22 (plaintiff's § 1981 claim was properly dismissed where plaintiff was justifiably offended when an employee refused to wait on him personally, but left the store of his own accord, and the store was not responsible for terminating the transaction).

In the end, PLS is in the business of cashing checks, but it is entitled to protect itself against financial loss, and plaintiff has not presented evidence from which a reasonable jury could infer discriminatory intent or rebutted defendants' nondiscriminatory reason for asking him questions and examining his checks further. Thus, defendants' motion for summary judgment must be granted.

## ORDER

IT IS ORDERED that:

1) Defendant PLS Group is DISMISSED without prejudice or costs.

2) The remaining defendants' motion for summary judgment (dkt. #37) is GRANTED.

3) The clerk of court is directed to enter final judgment in favor of defendants and to close this case.

Entered this 6th day of July, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge